UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X     19-CV-10377
LUCILLE TIRADO, as the Administratrix of the
Estate of EUGENE CASTELLE, Deceased,

                                                           Plaintiff,

            -against-

THE CITY OF NEW YORK; CORRECTION OFFICER
ANAIS DACRUZ (#18067); CORRECTION OFFICER
WARD (#6080); CORRECTION OFFICER BROWN
(#12987); CORRECTION OFFICER SISTRUNCK (#13421);
CORRECTION OFFICER NUGENT (#18109);
CORRECTION OFFICER DANIELS (#17339);
CORRECTION OFFICER AZEEZ (#1443); CORRECTION
OFFICER ROGERS (#); CORRECTION OFFICER
GARAMEDE; CAPTAIN BATCHELOR (#461); CAPTAIN
PRINCE (#1609); CAPTAIN ELLIS (#511); and DR. JOHN
DOE #1,

                                       Defendants.
------------------------------------------------------------------------X

          JURY TRIAL
          DEMANDED

          **COMPLAINT**

          ECF CASE

## I.     PRELIMINARY STATEMENT

1.     Plaintiff LUCILLE TIRADO, ("Plaintiff"), as mother and Administratrix of the Estate of EUGENE CASTELLE, brings this action for the death of her son caused while he was detained at facilities of the City of New York Department of Correction ("DOC") on Riker's Island. EUGENE CASTELLE's death was caused by the pattern and practice within the DOC, resulting in violations of the constitutional rights of those in DOC custody, and by the deliberate and willful indifference of DOC staff toward the medical needs of the decedent.

2.     Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for

violations of EUGENE CASTELLE's civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

## II.   JURISDICTION

3.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendment to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

## III.   VENUE

4.      Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §§ 1391(a), (b), and (c) and § 1402(b) because Defendant CITY of NEW YORK maintains its primary and relevant places of business in this district.

## IV.   JURY DEMAND

5.      Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V.   THE PARTIES

6.      That at all times hereinafter mentioned, EUGENE CASTELLE was a resident of the City of New York Department of Correction facilities on Rikers Island, in the County of the Bronx, City and State of New York.

7.      That at all times hereinafter mentioned, THE CITY OF NEW YORK DEPARTMENT OF CORRECTION ("DOC") was and is a mayoral agency of the City of New York, duly organized and existing under by virtue of the laws of the State of New York.

8.        That at all times hereinafter mentioned, the defendant, THE CITY OF NEW

YORK, ("CITY") is a municipal corporation that, through the DOC, operates a

number of detention facilities. DOC, through its senior officials at the central office,

in each facility, and in its specialized units, promulgates and implements policies,

including those with respect to the use, reporting, and investigation of force by

uniformed staff.  In addition, senior officials in DOC are aware of and tolerate

practices by subordinate employees in the jails, including those that are inconsistent

with formal policy.  These practices, because they are widespread, long-standing,

and deeply embedded in the culture of the agency, constitute unwritten Department

policies or customs.  The Department is also responsible for the appointment,

training, supervision, and conduct of all DOC personnel, including the Defendants

referenced herein.

9.        At all times relevant hereto, Defendant CORRECTION OFFICER ANAIS

DACRUZ (#18067) was a correction officer and employed by DOC, acting in the

capacity of agent, servant, and employee of Defendant CITY, within the scope of

their employment as such, and acting under color of state law.  On information and

belief, Defendant DACRUZ worked at the Anna M. Kross Center on Rikers Island

at the time of the incidents alleged herein, and perpetrated and/or supervised the

failure to take plaintiff to see a medical professional.  Defendant DACRUZ is sued

in their individual capacity.

10.       At all times relevant hereto, Defendant CORRECTION OFFICER WARD

(#6080) was a correction officer and employed by DOC, acting in the capacity of

agent, servant, and employee of Defendant CITY, within the scope of their employment as such, and acting under color of state law.  On information and belief, Defendant WARD worked at the Anna M. Kross Center on Rikers Island at the time of the incidents alleged herein, and perpetrated and/or supervised the failure to take plaintiff to see a medical professional.  Defendant WARD is sued in their individual capacity.

11.     At all times relevant hereto, Defendant CORRECTION OFFICER BROWN (#12987) was a correction officer and employed by DOC, acting in the capacity of agent, servant, and employee of Defendant CITY, within the scope of their employment as such, and acting under color of state law.  On information and belief, Defendant BROWN worked at the Anna M. Kross Center on Rikers Island at the time of the incidents alleged herein, and perpetrated and/or supervised the failure to take plaintiff to see a medical professional.  Defendant BROWN is sued in their individual capacity.

12.     At all times relevant hereto, CORRECTION OFFICER SISTRUNCK (#13421) was a correction officer and employed by DOC, acting in the capacity of agent, servant, and employee of Defendant CITY, within the scope of their employment as such, and acting under color of state law.  On information and belief, Defendant SISTRUNCK worked at the Anna M. Kross Center on Rikers Island at the time of the incidents alleged herein, and perpetrated and/or supervised the failure to take plaintiff to see a medical professional.  Defendant SISTRUNCK is sued in their individual capacity.

13.      At all times relevant hereto, Defendant CORRECTION OFFICER NUGENT (#18109) was a correction officer and employed by DOC, acting in the capacity of agent, servant, and employee of Defendant CITY, within the scope of their employment as such, and acting under color of state law. On information and belief, Defendant NUGENT worked at the Anna M. Kross Center on Rikers Island at the time of the incidents alleged herein, and perpetrated and/or supervised the failure to take plaintiff to see a medical professional. Defendant NUGENT is sued in their individual capacity.

14.      At all times relevant hereto, Defendant CORRECTION OFFICER DANIELS #17339) was a correction officer and employed by DOC, acting in the capacity of agent, servant, and employee of Defendant CITY, within the scope of their employment as such, and acting under color of state law. On information and belief, Defendant DANIELS worked at the Anna M. Kross Center on Rikers Island at the time of the incidents alleged herein, and perpetrated and/or supervised the failure to take plaintiff to see a medical professional. Defendant DANIELS is sued in their individual capacity.

15.      At all times relevant hereto, Defendant CORRECTION OFFICER AZEEZ (#1443) was a correction officer and employed by DOC, acting in the capacity of agent, servant, and employee of Defendant CITY, within the scope of their employment as such, and acting under color of state law. On information and belief, Defendant AZEEZ worked at the Anna M. Kross Center on Rikers Island at the time of the incidents alleged herein, and perpetrated and/or supervised the

failure to take plaintiff to see a medical professional.  Defendant AZEEZ is sued in their individual capacity

16.     At all times relevant hereto, Defendant CORRECTION OFFICER ROGERS was a correction officer and employed by DOC, acting in the capacity of agent, servant, and employee of Defendant CITY, within the scope of their employment as such, and acting under color of state law.  On information and belief, Defendant ROGERS worked at the Anna M. Kross Center on Rikers Island at the time of the incidents alleged herein, and perpetrated and/or supervised the failure to take plaintiff to see a medical professional.  Defendant ROGERS is sued in their individual capacity

17.     At all times relevant hereto, Defendant CORRECTION OFFICER GARAMEDE (#) was a correction officer and employed by DOC, acting in the capacity of agent, servant, and employee of Defendant CITY, within the scope of their employment as such, and acting under color of state law.  On information and belief, Defendant GARAMEDE worked at the Anna M. Kross Center on Rikers Island at the time of the incidents alleged herein, and perpetrated and/or supervised the failure to take plaintiff to see a medical professional.  Defendant GARAMEDE is sued in their individual capacity

18.     At all times relevant hereto, Defendant CAPTAIN BATCHELOR (#461) was a correction officer and employed by DOC, acting in the capacity of agent, servant, and employee of Defendant CITY, within the scope of their employment as such, and acting under color of state law.  On information and belief, Defendant BATCHELOR worked at the Anna M. Kross Center on Rikers Island at the time of

the incidents alleged herein, and perpetrated and/or supervised the failure to take

plaintiff to see a medical professional.  Defendant BATCHELOR is sued in their

individual capacity

19.        At all times relevant hereto, Defendant CAPTAIN BATCHELOR (#461)

was a correction officer and employed by DOC, acting in the capacity of agent,

servant, and employee of Defendant CITY, within the scope of their employment

as such, and acting under color of state law.  On information and belief, Defendant

BATCHELOR worked at the Anna M. Kross Center on Rikers Island at the time of

the incidents alleged herein, and perpetrated and/or supervised the failure to take

plaintiff to see a medical professional.  Defendant BATCHELOR is sued in their

individual capacity

20.        At all times relevant hereto, Defendant CAPTAIN PRINCE (#1609) was a

correction officer and employed by DOC, acting in the capacity of agent, servant,

and employee of Defendant CITY, within the scope of their employment as such,

and acting under color of state law.  On information and belief, Defendant PRINCE

worked at the Anna M. Kross Center on Rikers Island at the time of the incidents

alleged herein, and perpetrated and/or supervised the failure to take plaintiff to see

a medical professional.  Defendant PRINCE is sued in their individual capacity.

21.        At all times relevant hereto, Defendant CAPTAIN ELLIS (#511) was a

correction officer and employed by DOC, acting in the capacity of agent, servant,

and employee of Defendant CITY, within the scope of their employment as such,

and acting under color of state law.  On information and belief, Defendant ELLIS

worked at the Anna M. Kross Center on Rikers Island at the time of the incidents

alleged herein, and perpetrated and/or supervised the failure to take plaintiff to see a medical professional.  Defendant ELLIS is sued in their individual capacity.

22.        At all times relevant hereto, DR. JOHN DOE #1 was a doctor or other medical professional employed by DOC, acting in the capacity of agent, servant, and employee of Defendant CITY, within the scope of their employment as such, and acting under color of state law.  On information and belief, Defendant DOE worked at Rikers Island at the time of the incidents alleged herein, and was involved in Plaintiff's medical treatment.  Defendant DOE is sued in their individual capacity.

23.        That at all times relevant hereto, the defendant officers were acting within the scope and course of their employment with DOC, and under color of state law.

## VI.        STATEMENT OF FACTS

24.        Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

25.        On November 8, 2016, EUGENE CASTELLE (hereinafter referred to as "CASTELLE" or "decedent") died while in DOC custody at the Anna M. Kross Center ("AMKC") on Rikers Island. He had just turned 27 years old.

26.        AMKC is the facility on Rikers Island where all new pre-trial detainees with drug detoxification needs are housed.

27.        These detainees have a higher incidence of medical emergencies and a greater need for medical attention, than the population as a whole. These facts are known to THE CITY OF NEW YORK.

28.     On or about November 2, 2016, when CASTELLE entered Riker's Island,

on information and belief, he was put through the comprehensive medical screening

that is required under the Rules of the City of New York, Title 40, Chapter 3,

Section 3-04.

29.     This screening would have identified CASTELLE'S heart condition, which

caused a decrease in blood flow to his heart.

30.     In addition, CASTELLE was prescribed two separate depressants on intake,

Librium, a benzodiazepine used for anxiety, and Methadone, for treatment of his

heroin addiction. These two drugs provide a major risk of death when taken

together, particularly when combined with his pre-existing heart condition.

31.     DR. JOHN DOE #1 should have assigned CASTELLE to the North

Infirmary Compound ("NIC") at Riker's Island for close monitoring of his heart

condition while on the two prescribed medications.

32.     In the alternative, Dr. JOHN DOE #1 should have alerted the Correction

Officers that CASTELLE could present dangerous symptoms and must be taken to

the infirmary immediately if he became sick.

33.     Beginning on November 7, 2016, CASTELLE experienced symptoms of

the medical condition for which he would eventually die, including chest pains and

difficulty breathing.

34.     CASTELLE requested medical attention from the Correction Office on duty

in Dorm 4 of AMKC on at least on occasion on November 7, 2016.

35.    Upon information and belief, Defendants C.O. WARD and CAPTAIN BATCHELOR were on post in Dorm 4 of AMKC when CASTELLE made these complaints.

36.    In the early morning hours of November 8, 2016, CASTELLE was assisted by a fellow inmate to the "Bubble" i.e. the Correction Officer's duty station, to again request medical attention for his symptoms. Upon information and belief, the C.O. on duty was defendant ANAIS DACRUZ.

37.    C.O. DACRUZ was working the tail end of a triple shift.

38.    Despite observing that CASTELLE needed assistance walking and exhibited symptoms of serious illness, C.O. DACRUZ denied CASTELLE's request for medical attention, cursed at him, and ordered him back to his bed.

39.    On the morning of CASTELLE's death, defendant DACRUZ was working the third of a "triple," i.e. three 8-hour long tours in a row. DACRUZ was asleep when CASTELLE went to make his final request for medical attention.

40.    Annoyed that he had been woken up, defendant DACRUZ cursed at CASTELLE and ordered him back to his bunk, disregarding DOC procedures relating to the medical needs of the inmates.

41.    Providing the medical attention requested by CASTELLE would have required minimal effort on the part of defendants, as there is a clinic staffed by medical professionals inside the building of the AMKC facility.

42.    CASTELLE complied with this order and returned to his bunk. He died in his sleep.

43.     Under the Rules of the City of New York, Title 40, Chapter 3, Section 3-02(d)(2), these Corrections Officer had zero discretion as to whether to take CASTELLE to see a medical professional.

44.     They were required to do so, and CASTELLE was entitled under law to have a face to face interaction with a medical professional.

45.     Upon information and belief, CASTELLE was discovered by the Correction Officer who relieved defendant DACRUZ at approximately 8:00 a.m. on November 8, 2016.

46.     This willful neglect of EUGENE CASTELLE's medical needs caused his death.

**FIRST CLAIM FOR RELIEF**
**DELIBERATE INDIFFERENCE UNDER**
**42 U.S.C. § 1983 and the FOURTEENTH AMENDMENT**

47.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

48.     By reason of the foregoing, and by behaving with deliberate indifference to a life threatening medical need, the individually named defendants, CORRECTION OFFICER ANAIS DACRUZ (#18067); CORRECTION OFFICER WARD (#6080); CORRECTION OFFICER BROWN (#12987); CORRECTION OFFICER SISTRUNCK (#13421); CORRECTION OFFICER NUGENT (#18109); CORRECTION OFFICER DANIELS #17339); CORRECTION OFFICER AZEEZ (#1443); CORRECTION OFFICER GARAMEDE (#); CAPTAIN BATCHELOR (#461); CAPTAIN PRINCE (#1609); and CAPTAIN

ELLIS (#511); deprived EUGENE CASTELLE of the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourteenth Amendment of the United States Constitution.

49.      But for the defendants' willful and deliberate indifference to the medical condition of a person in their custody, EUGENE CASTELLE would have survived and would be alive today.

50.      Further, JOHN DOE #1 is liable for willfully and deliberately failing to ensure that CASTELLE was properly housed at the NIC as of November 7, 2016, and he failed to advise Correction Officers of the importance of taking CASTELLE to a medical professional, given his medication and preexisting injuries as of November 7, 2016.

51.      As a direct and proximate result of the Defendants' misconduct detailed above, Plaintiff sustained the damages hereinbefore alleged.

<u>**SECOND CLAIM FOR RELIEF**</u>
**MUNICIPAL LIABILITY UNDER MONELL ARISING FROM UNCONSTITUTIONAL POLICIES AND CUSTOMS UNDER 42 U.S.C. §1983**

52.      Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

53.      For decades, through Department reports and civil litigation, the DOC has been aware of the routine, dangerous, and unconstitutional behavior by staff at

individual facilities in the large, multi-jail New York City Department of Correction.[1]

54.     The problems at Rikers Island are of such a magnitude that THE CITY OF NEW YORK announced it intends to shut down the whole jail complex.  Former Chief Judge Jonathan Lippman and City Council Speaker Melissa Mark-Viverito had this to say: "Rikers Island is an affront to the civic values of New York City. Reforming our jail system and closing Rikers Island is not simply good public policy — it is a moral imperative."[2]

55.     For example, *Sheppard v. Phoenix*, 210 F. Supp. 2d 250 (S.D.N.Y. 1998) (terminating injunction), was a class action that concerned the City's Central Punitive Segregation Unit (CPSU).  That litigation unearthed abuse of prisoners and its cover-up, which was sufficiently serious to merit criminal prosecutions of DOC staff members.

56.     *Ingles v. Toro*, 438 F. Supp. 2d 203 (S.D.N.Y. 2006) (approving stipulation of settlement), was a system-wide class action challenging the widespread practice of using excessive force against inmates incarcerated in New York City's jails. This litigation revealed significant numbers of credible excessive force complaints from

---

[1] *See, e.g., Fisher v. Koehler*, 692 F. Supp. 1519 (S.D.N.Y. 1988), *injunction entered*, 718 F. Supp. 1111 (1989), *aff'd*, 902 F.2d 2 (2d Cir. 1990) (Correction Institution for Men); *Jackson v. Montemagno*, 85 Civ. 2384 (AS) (E.D.N.Y.) (Brooklyn House of Detention); *Reynolds v. Ward*, 81 Civ. 101 (PNL) (S.D.N.Y.) (Bellevue Prison Psychiatric Ward).

 2 Jonathan Lippman and Melissa Marl-Viverito, *Closing Rikers Island Is a Moral Imperative*, NY Times (March 31, 2017), https://www.nytimes.com/2017/03/31/opinion/closing-rikers-island-is-a-moral-imperative.html?rref=collection%2Ftimestopic%2FRikers%20Island%20Prison%20Complex&action=click&contentCollection=timestopics&region=stream&module=stream_unit&version=latest&contentPlacement=4&pgtype=collection

prisoners who had been seriously injured by staff in the City jails.  The settlement of this class action was intended to provide meaningful improvements in the training, practice, and supervision of agency staff and investigators, and changes in the Department's use of force policy.

57.        In *Nunez, et al. v. City of New York, et al.*, 11-cv-5845 (LTS) (JCF), twelve plaintiffs pursued a class action to remedy the ever-increasing level of unjustified, excessive brutality inflicted by DOC correctional staff on inmates in the City Jails. In that action, the plaintiffs—composed of twelve former inmates, who suffered fourteen different assaults by correctional staff, and sustained injuries ranging from spinal injuries to facial fractures to rib fractures to concussions—have sued the City of New York, DOC Commissioner Schriro, and a number of current and former high-ranking officers to seek declaratory and injunctive relief that would rid the Department of the brutal conduct of its staff.

58.        The U.S. Attorney's Office for the Southern District of New York has issued its investigation report, under the Civil Rights of Institutionalized Persons Act ("CRIPA"), into staff violence at the Robert N. Davoren Center ("RNDC") directed at adolescents and adults.

59.        In addition, there have been a number of recent, highly-publicized incidents of brutal violence in the City's jails.  For example, in 2012, correctional staff allegedly beat to death Ronald Spear, a chronically ill inmate, in the North Infirmary Command on Rikers Island after Mr. Spear requested medical care.  The Bronx District Attorney's investigation into Mr. Spear's death, which has been determined to be a homicide, is ongoing.

60.     In May 2012, a former assistant deputy warden and captain were charged with assaulting an inmate and falsifying use of force reports as part of a cover up, and in June 2012, a probationary captain was prosecuted on similar charges, according to reports in the Village Voice.

61.     In 2012, five correctional officers, reportedly acting at the orders of former Assistant Chief of Security Eliseo Perez, Jr., led inmate Jamal Lightfoot into a search pen, and assaulted him, resulting in a fractured eye socket and nose, according to The New York Times.  Chief Perez, along with nine other Department staff, including a captain, were reportedly arraigned on criminal charges relating to Mr. Lightfoot's assault and the officers' attempts to hide their misconduct by falsely claiming that Mr. Lightfoot had attempted to assault an officer, and generating false evidence to support those claims.

62.     The pattern and practice of unconstitutional behavior in the City jails is highlighted by ongoing settlements of large sums to settle excessive force lawsuits. Since 2002, the City has expended millions of dollars settling lawsuits filed by inmates who suffered injuries much like the ones experienced by Plaintiff.

63.     Through DOC's elaborate reporting system, the Supervisory Defendants were aware of the pattern of a large number of incidents involving the deliberate indifference to the medical needs of detainees resulting in serious injuries or death, and have failed to take sufficient steps to curb these abuses.

64.     DOC and the Supervisory Defendants have also been made aware of the failure of the Department to bring disciplinary charges against its officers to

promote institutional reform, punish staff who mistreat detainees, and discourage others from doing so.

65.      Through all these cases and DOC reports, the Supervisory Defendants have been made aware of the failures of DOC's Investigation Division to adequately investigate allegations of misconduct, a practice that causes further abuse.

66.      These Supervisory Defendants cannot credibly contend that they were unaware of the pattern of medical neglect that occurs with regularity in New York City jails or the failure of the Department to take sufficient measures to investigate and discipline this willful neglect.

67.      *Carlson et al v. City of New York et al*, 17-CV-0172 (SDNY) (involving the 2015 death of Richard Gonzalez at the same facility and under similar circumstances of medical neglect to the instant matter) highlights the defendant CITY OF NEW YORK's constructive acquiescence to the pattern of deliberate indifference to the medical needs of detainees in DOC custody.

68.      THE CITY OF NEW YORK has failed to adequately staff AMKC, has maintained overcrowded conditions there, and has failed to adequately provide for the medical care of the persons detained there, including failing to provide emergency medical treatment to individuals experiencing life-threatening medical crises.  During the three years prior to Eugene Castelle's death, at least five other inmates at AMKC needlessly died because of the failure to provide medical care, including Richard Gonzalez, Carlos Mercado, Bradley Ballard, Jerome Murdough, and Victor Woods.

69.       Carlos Mercado died on August 24, 2013, during intake processing at

AMKC.   Like Mr. Gonzalez, Mr. Mercado died before the routine medical

evaluation that is the last step of intake processing at AMKC.  Also like Eugene

Castelle, Mr. Mercado's and other inmates' pleas for medical assistance for Mr.

Mercado were ignored.   He died of diabetic ketoacidosis, an easily treatable

condition.   Instead of providing emergency medical treatment, he was given a

plastic bag to vomit into as he staggered through intake processing.  At one point,

Mr. Mercado fell out of a cell onto the floor, where numerous Department of

Correction officers stepped over him until he was picked up and thrust back into

the cell.  The sheer number of officers who observed Mr. Mercado's condition and

heard pleas to provide medical assistance, but ignored them – as the defendants

herein ignored the pleas to help Mr. Gonzalez -- demonstrates a policy, custom and

practice of officers failing to summon or provide emergency medical care.  All of

the officers depicted in surveillance video from AMKC Intake ignored Mr.

Mercado's               obvious               medical               condition:

https://www.nytimes.com/video/nyregion/100000003884279/countdown-to-

death-at-rikers-island.html.

70.       Bradley Ballard died on September 11, 2013, at AMKC.  He had been

locked in a cell in the mental health unit at AMKC for six days, where he was found

naked and covered in urine and feces.  He had been deprived of medications for his

diabetes and schizophrenia, and had no running water in his cell.  While held at

AMKC, Department of Correction staff stood by and watched as Mr. Ballard

languished, deteriorated, and ultimately died.  The New York State Commission on

Corrections found that his treatment by DOC staff was so incompetent and inadequate as to shock the conscience.

71.        Jerome Murdough died on February 15, 2014, seven days after his arrival at AMKC, while being held in the mental health unit there.  He was housed in a cell in which the heating system was broken, causing the temperature to rise above 100 degrees, and causing his death from hyperthermia.  He had been left alone and unattended in the cell for at least several hours.

72.        Victor Woods died on October 1, 2014, at AMKC.  He was hemorrhaging internally while other inmates pleaded with Department of Correction staff to get medical assistance for him.  Correction officers ignored their pleas as Mr. Woods bled to death.

73.        At all times material to this complaint, defendant THE CITY OF NEW YORK was deliberately indifferent to the medical needs of the persons held in Department of Correction custody, which was a direct and proximate cause of the unconstitutional conduct alleged herein.

74.        At all times material to this complaint, defendant THE CITY OF NEW YORK had a custom and practice of not providing emergency care to inmates at AMKC during intake processing (*i.e.*, emergency treatment before the routine medical examination that is the last step of the intake process), which was a direct and proximate cause of the unconstitutional conduct alleged herein.

75.        At all times material to this complaint, defendant THE CITY OF NEW YORK failed to properly train, screen, supervise, or discipline employees, and failed to inform the individual defendants' supervisors of their need to train, screen,

18

supervise or discipline the individual defendants, despite notice that the individual defendants were in need of training, supervision, and discipline.

76.     At all times material to this complaint, defendant THE CITY OF NEW YORK failed to put adequate policies in place concerning the treatment of persons while in custody, and failed to properly train officers and employees concerning such assessment and treatment.  For example, at or about the time of Richard Gonzalez's death, approximately 45% of Department of Correction employees had not received mandated Cardio Pulmonary Resuscitation training for more than a year, and in many cases, for many years.

77.     THE CITY OF NEW YORK was aware of the pattern of inadequate medical care at AMKC, and failed to take sufficient measures to investigate, train and discipline, and to end the unconstitutional conditions there.

78.     The policies, practices, customs, and usages, and the failure to properly train, screen, supervise, or discipline, were a direct and proximate cause of the unconstitutional conduct alleged herein, causing injury and damage in violation of plaintiffs' and Mr. Gonzalez's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its First and Fourth Amendments and the Due Process Clause of the Fourteenth Amendment.

79.     As a result of the foregoing, Richard Gonzalez suffered death, conscious pain and suffering, injury, and economic loss.

80.     As a result of the aforementioned conduct of the defendant CITY OF NEW YORK, and the individual defendants, EUGENE CASTELLE's constitutional rights were violated, resulting in his death.

81.     As a result of the defendants' impermissible conduct, plaintiff demands judgment against defendants in a sum of money to be determined at trial.

**WHEREFORE**, plaintiff demands the following relief jointly and severally against all of the defendants:

      a. Compensatory damages;
      b. Punitive damages;
      c. The convening and empaneling of a jury to consider the merits of the claims herein;
      d. Costs and interest and attorney's fees;
      e. Such other and further relief as this court may deem appropriate and equitable.

DATED:      New York, New York
            November 7, 2019

Respectfully submitted,

**THE LAW OFFICE OF**
**CHRISTOPHER H. FITZGERALD**

_____/s/_____
By: Christopher H. Fitzgerald (CF1415)
233 Broadway, Suite 2348
New York, NY 10279
(212) 226-2275

**RICKNER PLLC**

_____/s/_____
By: Rob Rickner
233 Broadway Suite 2220
New York, New York 10279
(212) 300-6506

*Attorneys for Plaintiff Lucille Tirado,*
*As Administratrix for the Estate of*
*Eugene Castelle*