

**Darshan I. Patel**
**Partner**
dmay@hpmb.com

January 21, 2020

**VIA ECF**
Honorable Judge Sarah Netburn
Thurgood Marshall United States Courthouse
Southern District of New York
40 Foley Square, Courtroom 219
New York, NY 10007

Re:   **Tirado/Castelle v. City of New York, et al.**
      Index No.:     19-cv-10377-LAK-SN
      Our File No.:  611-3290

Dear Judge Netburn:

Our law firm represents the Defendants in the above-referenced matter. This letter is submitted in response to plaintiff's letter motion on January 19, 2021 (ECF # 94) as well as for an application for bifurcation of discovery related to plaintiff's *Monell* claims, and to stay *Monell* discovery pending the resolution of Plaintiff's underlying individual claims. No prior request for this relief has been made.

**Nature of Claims and Relevant Procedural History:**

Plaintiff claims constitutional violations of deliberate indifference under 42 U.S.C. § 1983 and municipal liability under *Monell* relating to the death of her son Eugene Castelle at Rikers Island on November 8, 2016. More specifically, plaintiff claims that, on November 2, 2016, upon Mr. Castelle's arrival to Rikers Island, physician assistant Alexis Quentz improperly prescribed Librium and methadone together without first obtaining an EKG, a test, which plaintiff claims, would have diagnosed a heart condition that the inmate unknowingly suffered from at the time.

Plaintiff further claims that Mr. Castelle approached Correction Officer Dacruz seeking medical attention during the early morning hours of November 8, 2016, but that the defendant ordered him back to his housing area despite the inmate manifesting "symptoms of a serious illness." Plaintiff alleges that, pursuant to the Rules of the City of New York, Title 40, Chapter 3, Section 3-02(d)(2), C.O. Dacruz and the other correction officers had "zero discretion" as to whether to take Mr. Castelle to see a medical professional. Mr. Castelle died of cardiac arrest later that morning.

Honorable Justice Sarah Netburn
Re: Tirado/Castelle v. City of New York, et al.
January 21, 2021
Page - 2 -



With respect to the other correction officer defendants, including supervisors, plaintiff simply claims, in her amended complaint, that each of these defendants "perpetrated and/or supervised the failure to take plaintiff to see a medical professional" even though there is no suggestion that any of these other defendants ever came into contact with decedent, knew decedent was on medication or had any reason to believe he was ill.

With respect to her *Monell* claims, plaintiff maintains that the City had a widespread custom and practice of failing to provide emergency care to inmates at AMKC during intake processing.

Defendants' Motion to Dismiss under 12(b)(6) is still pending. In their motion, defendants contend that plaintiffs have failed to allege a viable claim of deliberate indifference against PA Quentz or CO Dacruz. In that regard, the applicable FDA labels never suggest that it is inappropriate to prescribe Librium and methadone together or that an EKG is necessary before prescribing them together or, as claimed by plaintiff, the simultaneous use of the medications "provide a major risk of death." PA Quentz's attempts to treat Mr. Castelle's withdrawal symptoms are strong proof that he was not "deliberately indifferent" to the inmate's medical needs and that, at worst, plaintiff has raised a claim for medical malpractice and not a constitutional violation of medical needs. Further, plaintiff's claims against PA Quentz are untimely under the applicable statute of limitations.

With respect to CO Dacruz, RCNY 40 Section 3-02(d)(2) only requires a correction officer make the appropriate notifications only if he or she determined that the inmate required emergency health services. Here, there is no evidence that CO Dacruz knew that the inmate needs emergent care, but refused or denied him treatment. Again, at worst, plaintiff's claims sound of negligence based upon the failure of a correctional officer, untrained in medicine, to recognize the severity of an inmate's illness.

With respect to *Monell*, defendants contend that plaintiff's claims are without merit because, as set forth above, she cannot and will not establish an underlying violation to impute municipal liability. The prior cases that plaintiff submits to establish a widespread custom or practice of deliberate indifference to the medical needs of inmates involve excessive force or facts that are not analogous to the case at bar.

**Discovery Demands:**

As set forth above, plaintiff's claims regarding deliberate indifference are fairly limited and narrow: 1) a failure to prescribe Librium and methadone to an inmate with an unknown heart condition without first obtaining an EKG; 2) failure on the part of a correction officer to seek immediate or appropriate medical attention for an inmate who, on a single occasion, was allegedly manifesting "symptoms of a serious illness." Plaintiff's municipal liability claims pertain to an alleged "custom and practice of not providing emergency care to inmates at AMKC during intake processing (i.e., emergency treatment before the routine medical examination that is the last step of the intake process)"

Honorable Justice Sarah Netburn
Re: Tirado/Castelle v. City of New York, et al.
January 21, 2021
Page - 3 -



In contrast, plaintiff's interrogatories are sprawling and without bounds. To summarize, plaintiff seeks:

- Information of "all inmate deaths at Rikers Island from January 1, 2011 to December 31, 2018", regardless of the cause of death, whether medical care was an issue or whether the inmate was prescribed any medications or allegedly sought or needed emergent medical care, all of which are the underlying legal and medical issues in this case. Further, decedent died in 2016, but plaintiff claims that she is entitled to information through 2018; (Interrogatory # 6)

- "All summaries, tabulations or compilations of data" as well as "all reports generated, or documents created or provided by DOC in connection with any assessments, evaluations, studies or investigations, conducted by any government agency; licensing, auditing, or accrediting agency; or other independent third party " concerning, among other things, inmate deaths, mental health, which is not even at issue in this case, complaints about medical treatment or delays thereof, hiring, training of DOC staff, including supervisors, and "provision of emergency medical services to inmates, together with any analyses of this data, including, without limitation, information collected for the staff assigned to the Department of Correction's central office and the Commissioner's review at "TEAMS" meetings, and information collected for any government agency or third-party auditor." (Document Request ## 9 and 10)

- All communications, including emails, between 2011-2018, relating to "inmate deaths, medical negligence, delays in providing medical care, inadequate medical services, and or provision of emergency medical services" to inmates at "any Rikers location." (Document request ##11-15)

- Copies of all Notice of Claims, legal complaints, state or federal, as well as general complaints, allegations, and request for investigation between 2011-2018 as a result of a delay in medical care, medical negligence, or provision of medications to inmates (Document request ## 16-18)

- All documents maintained "in the intelligence unit and investigations divisions" or "all Unusual Incident Reports or Incident Reports" concerning inmate deaths, medical negligence, delays in providing medical care, inadequate medical services, and/or provision or emergency services to inmates" at "any Rikers Island located" between 2011-2018. (Document Request ## 20-21)

- "All documents concerning the location of stationary cameras" where Mr. Castelle was housed. (Document Request ##23)

Honorable Justice Sarah Netburn
Re:  Tirado/Castelle v. City of New York, et al.
January 21, 2021
Page - 4 -



Defendants have not "refused to provide any discovery that is relevant to the *Monell* claims", as alleged by plaintiff in her letter motion.  Rather, defendants have justifiably objected that plaintiff's demands are excessive, but have had no success in limiting the scope of her requests.

**Application for Bifurcation of *Monell* Discovery:**

The above demands are excessive and extreme by any standard.  The demands include requests for all possible documents spanning a period of seven years and represent a "fishing expedition" for discovery with no basis, connection or relevance to plaintiff's present claims.  The DOC has advised that they have never seen a demand so "broad" or "massive" and has advised that, based upon their present search, they are not familiar with "summaries, tabulations or compilations of data" sought by plaintiff.

The demands in dispute implicate a substantial number of documents, which would require defendants to conduct inquiries of several other agencies besides NYC H+H and the Department of Correction, and require vast amounts of time and labor by defendants to satisfy.  Essentially, plaintiff seeks entire categories of documents over periods of years, most which are not relevant to any of the claims, and may be in multiple locations not currently known.

It bears repeating that plaintiff's allegations do not rise to level of a constitutional violation and that it is necessary to establish such a violation before municipal liability can attach.   Plaintiff initially and rightfully commenced this action in state court, claiming medical malpractice.  When those claims were dismissed for a failure to file a timely notice of claim, plaintiff commenced this action in federal court, claiming that her previously acknowledged claims of medical malpractice now represented constitutional violations for which municipal liability should attach.  Therefore, it would be appropriate for discovery to proceed on the medical issue initially, and if constitutional deviations are found, proceed to *Monell* discovery.

Pursuant to Fed. R. Civ. Pro. 42(b), "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims…"  In addition, pursuant to Fed. R. Civ. Pro. 26(c), this Court is invested with the discretionary authority to stay and/or limit discovery by entering any order which justice requires "to protect a party or person from …undue burden or expense."  A court may order separate trials in order to "1) avoid prejudice; 2) provide for convenience; or 3) expedite the proceedings and be economical."  *Ricciuti v. New York City Transit*, 796 F. Supp. 84, 86 (S.D.N.Y. 1992) *citing Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y. 1989), aff'd 899 F. 2d 183 (2d Cir. 1990); *United States v. International Business Machine Corp.*, 60 F.R.D. 654, 657 (S.D.N.Y. 1973).  Only one of these conditions need be met to warrant bifurcation.  *Ismail*, 706 F. Supp. at 251.

In order to establish liability against municipal defendants on a *Monell* claim, a plaintiff must make two showings:  (1) that they actually suffered a constitutional violation; and (2) that the constitutional harm suffered was the result of a municipal policy or custom.  *Monell v. Dep't of Social Services*, 436 U.S. 658, 694-95 (1978).  Since there is no finding of *Monell* liability without first finding a constitutional violation, in an effort to promote convenience and economy,



courts in this Circuit have stayed *Monell* discovery and bifurcated the *Monell* claim until plaintiff succeeds in establishing liability on the part of the individual defendants. *See e.g., Ricciuti v. New York City Transit*, 796 F. Supp. 84 (S.D.N.Y. 1992); *Busch v. City of New York*, 2002 U.S. Dist. LEXIS 18337 (E.D.N.Y. Sept. 24, 2002); *Masi v. City of New York*, 1999 U.S. Dist. LEXIS 13488 (S.D.N.Y. Sept. 2, 1999). "The overwhelming weight of authority holds that since the City's liability is derivative of the individual defendants' liability and since the proof required to establish a *Monell* claim is substantially different from the proof necessary to establish individual liability, the most prudent course is to try the *Monell* claims separately and to stay discovery concerning those claims until the liability of the individual defendants is established." *Morales v. Irizzary* 1996 U.S. Dist. LEXIS 15613, at *3-4 (S.D.N.Y Oct. 17, 1996); *Roper v. City of New York*, 2017 U.S. Dist. LEXIS 14918 (S.D.N.Y. Jan. 25, 2017); *Hemeric v. City of New York*, 2002 U.S. Dist. LEXIS 4621, n2 at *4 (S.D.N.Y. 2002) ("Frequently, courts stay a *Monell* claim pending resolution of the underlying claim. If the plaintiff is successful on the underlying claim, discovery and proceedings in pursuit of the *Monell* claim occur."); *Thrower v. Pozzi*, 99 Civ. 5871 (GBD), 2002 U.S. Dist. LEXIS 1035, at *22 (S.D.N.Y. Jan. 23, 2002)(finding good cause to stay *Monell* discovery: "If the parties proceed with limited discovery, they will have the opportunity to reassess the case once discovery on the threshold issues are completed. At that point, the parties may wish to file dispositive motions, or proceed with the case. Given that discovery on the claims against the individual defendants is much more limited, efficiency will best be served if [*Monell*] discovery… is stayed pending completion of discovery on the claims against the individuals"); *Tabor v. New York City*, 11 CV0195 (FB), 2012 U.S. Dist. LEXIS 29004 (E.D.N.Y. Feb. 23, 2012)(finding it appropriate to bifurcate *Monell* discovery and stay Monell discovery).

If there is a trial, and a finding that the decedent's constitutional rights were not violated in any way by the individual defendants, plaintiff will be unable to pursue a claim against the City of New York. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see Roper*, 2017 U.S. Dist. LEXIS 14918 at *2-3. Thus, in the event that defendants prevail, either via summary judgment or at trial, there will be no need to engage in voluminous and burdensome *Monell* discovery, or for the parties to seek additional judicial intervention when the inevitable disputes arise related to *Monell* discovery. In sum, "[c]onvenience and judicial economy alone dictate bifurcation." *Ricciuti v. New York City Transit Auth.*, 796 F. Supp. 84, 86 (S.D.N.Y. 1992); *see Brown v. City of New York*, 2016 U.S. Dist. LEXIS 18670 at *3-4 (S.D.N.Y. Feb. 16, 2016).

In addition to conserving the Court's resources, fairness also dictates that claims against the City be bifurcated from claims against individual city employees. Plaintiff would not be prejudiced by bifurcation. Staying *Monell* discovery will not prejudice plaintiff's ability to pursue her claims against the individual defendants. Even if the *Monell* claims are bifurcated, the parties can continue to litigate the underlying claims without delay. Defendants have already produced nearly all of the paper discovery relating to the incident itself. On the other hand, Defendants will be prejudiced if bifurcation is denied. Responding to *Monell* discovery would create a great expense and burden for Defendants, and engaging in motion practice to challenge Plaintiff's improper requests would be necessary.

Honorable Justice Sarah Netburn
Re:  Tirado/Castelle v. City of New York, et al.
January 21, 2021
Page - 6 -



It is apparent from the demands as outlined above that Plaintiff's counsel has no intention of limiting the scope of their improper demands.  Defendants have made a good faith effort to parse through the demands and have responded to most of them.  It is defendants' position that at this stage in the litigation, being fully briefed on the nature of the demands, this Court can easily bifurcate discovery.  Therefore, based on the foregoing, it is respectfully requested that this Court grant Defendants' application to bifurcate discovery of Plaintiff's *Monell* claims, staying *Monell* discovery until Plaintiff's underlying individual claims are resolved.

The case law in plaintiff's letter motion is unpersuasive.  *M.T. v. City of New York*, 325 F. Supp. 3d 487 pertains to a sexual assault incident. In that case the court looked to an outside consultant report (DOC hired the Moss Group) to establish that prior sexual assault incidents obviously existed. In *Cash v. County of Erie*, the Second Circuit found that, based on a single prior incident of sexual contact between a prisoner and prison guards, a jury could reasonably conclude that the municipality was on notice that its policies in that area were inadequate." Here, plaintiff's *Monell* claims are not based upon an inadequate policy.

*Edwards v. City of New York*, 2019 U.S. Dist. LEXIS 127894  related to an unprovoked attack by the inmate and an officer who reacted by punching the inmate in the head.  Medical care was not an issue and there is no discussion regarding the scope of *Monell* discovery in that case.  In *Bektic-Marrero v. Goldberg*, 850 F. Supp. 2d 41, plaintiff relied on United States Department of Justice Report to establish the existence of a policy/custom. Again, there is no alleged policy/custom in the case at bar and the cited case offered no discussion as to the breadth of discovery under *Monell*.  Plaintiff has not submitted any case law that support her demands for nearly unlimited discovery in this case.

In contrast, Rule 26 of the Federal Rules, with respect to scope of discovery, specifically limit demands to that which"

> "is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues as stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

 We thank the Court for its consideration of these requests.

                                      Respectfully submitted,

                                      HEIDELL, PITTONI, MURPHY & BACH, LLP

DGM:vm                                            Darshan I. Patel

cc: **VIA ECF** - *All Parties*

1834003.1