**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**LUCILLE TIRADO, as the**
**Administratrix of the Estate of**
**EUGENE CASTELLE, Deceased**,

     Plaintiff,

  -against-

**THE CITY OF NEW YORK, et al.**,

     Defendants.

        **19-cv-10377 (LAK) (SN)**

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**THE DEFENDANTS' OBJECTIONS TO MAGISTRATE NETBURN'S REPORT AND**
**RECOMMENDATIONS ON DEFENDANTS' MOTION TO DISMISS**

RICKNER PLLC
14 Wall Street, Suite 1603
New York, New York 10005

THE LAW OFFICES OF
CHRISTOPHER H. FITZGERALD
233 Broadway Suite 2220
New York, New York 10279

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS .......................................................................................................... 3

    a.    Castelle's Death at Riker's Island. ........................................................................... 3

    b.    Castelle's Parents Spent Years Investigating Their Son's Death. ............................... 5

ARGUMENT ................................................................................................................................ 8

I.     DEFENDANTS VIOLATED CASTELLE'S FOURTEENTH AMENDMENT RIGHT TO ADEQUATE MEDICAL CARE .......................................................................................... 9

    a.    Castelle's was subjected to an objectively serious deprivation of medical care. ...... 10

    b.    DaCruz was objectively reckless in disregarding Castelle's serious medical needs 11

    c.    Alexis was objectively reckless in disregarding Castelle's serious medical needs by ignoring the dangers of prescribing methadone and Librium. .............................................. 13

II.    THE STATUTE OF LIMITATIONS DOES NOT BAR THE CLAIMS AGAINST ALEXIS. .......................................................................................................................... 14

    a.    Plaintiff's claims against Alexis did not accrue until November 7, 2016. ................ 14

    b.    The claims against Alexis relate back to the time the Complaint was timely filed. . 16

III.    IN THE ALTERNATIVE, PLAINTIFF SHOULD BE ALLOWED TO AMEND THE COMPLAINT. ............................................................................................................ 18

IV.    DEFENDANTS' COMPLAINTS ABOUT *MONELL* DISCOVERY CAME TOO LATE, WILL SOON BE MOOT, AND DO NOT DEMONSTRATE CLEAR ERROR ........ 18

CONCLUSION ........................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp. 380 (W.D.N.Y. 1992) . 9

*Cano v. City of New York*, 44 F. Supp. 3d 324 (E.D.N.Y. 2014) .................................................. 11

*Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 206 F.R.D. 78 (S.D.N.Y. 2002) ........................ 19

*Charles v. Orange Cty.*, 925 F.3d 73 (2d Cir. 2019) ...................................................................... 11

*Citicorp v. Interbank Card Ass'n*, 87 F.R.D. 43 (S.D.N.Y.1980) ................................................ 19

*Colon v. City of New York*, No. 11-CV-0173 (MKB), 2014 WL 1338730 (E.D.N.Y. Apr. 2, 2014) ...................................................................................................................................................... 15

*DaCosta v. City of New York*, 296 F. Supp. 3d 569 (E.D.N.Y. 2017) .................................... 16, 17

*Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017) .............................................................................. 9

*Dash v. Mayers*, No. 19-CV-414 (GBD) (JLC), 2020 WL 1946303 (S.D.N.Y. Apr. 23, 2020), report and recommendation adopted sub nom. *Dash v. Doe*, 2020 WL 3057133 (S.D.N.Y. June 9, 2020) ...................................................................................................................................... 12

*Duncan v. City of New York*, 11-CV-3901 (ENV) (JO), 2014 WL 3530858 (E.D.N.Y. July 15, 2014) .......................................................................................................................................... 17

*Eagleston v. Guido*, 41 F.3d 865 (2d Cir. 1994) ........................................................................... 15

*Fairley v. Collins*, No. 09-CV-6894 (PGG), 2011 WL 1002422 (S.D.N.Y. Mar. 15, 2011) ......... 15

*Fleming v. City of New York*, No. 18 CIV. 4866 (GBD), 2019 WL 4392522 (S.D.N.Y. Aug. 27, 2019), *reconsideration denied*, No. 18 CIV. 4866 (GBD), 2020 WL 2133162 (S.D.N.Y. May 5, 2020) .......................................................................................................................................... 11

*Gonzalez v. Wright*, 665 F. Supp. 2d 334 (S.D.N.Y. 2009) ......................................................... 15

*Helling v. McKinney*, 509 U.S. 25 (1993) .................................................................................... 11

*Hogan v. Fischer*, 738 F.3d 509 (2d Cir. 2013) ...................................................................... 16, 17

*Hutchinson v. N.Y. State Corr. Officers*, No. 02-cv-02407 (CBM), 2003 WL 22056997 (S.D.N.Y. Sept. 4, 2003) .............................................................................................................................. 10

*Leon v. Murphy*, 988 F.2d 303 (2d Cir.1993) ............................................................................... 14

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015)............ 18

*Lynch v. City of New York*, 952 F.3d 67 (2d Cir. 2020).................................................. 12

*Mandala v. Coughlin*, 920 F. Supp. 342 (E.D.N.Y. 1996) ........................................... 10

*Mathias v. Jacobs*, 167 F.Supp.2d 606 (S.D.N.Y.2001)................................................. 19

*Medina v. City of New York*, 134 A.D.3d 433 (1st Dept 2015) .................................... 16

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)........................... passim

*Moskowitz v. La Suisse, Societe D'Assurances sur la Vie*, 282 F.R.D. 54 (S.D.N.Y. 2012) ........... 9

*Owens v. Okure*, 488 U.S. 235 (1989)........................................................... 16

*Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir.1980) ....................... 9

*Perez v. Johnson*, No. 07-CV-3761 (NRB), 2008 WL 2876546 (S.D.N.Y. July 23, 2008) .......... 14

*Rogers v. Dunkirk Aviation Sales & Serv., Inc.*, 31 A.D.3d 1119 (4th Dept. 2006) ...................... 18

*Rotella v. Wood*, 528 U.S. 549 (2000)............................................................ 15

*Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006) ................................................ 11

*Sheikhan v. Lenox Hill Hospital*, 98-CV-6468 (WHP), 1999 WL 386714 (S.D.N.Y. June 11, 1999) .................................................................................... 18

*Smith v. Outlaw*, No. 15-cv-09961 (RA), 2017 WL 4417699 (S.D.N.Y. Sept. 30, 2017) ...... 10, 12

*Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F.Supp.2d 70 (N.D.N.Y.2000) ............................ 19

*Traore v. Shield*, No. 14-CV-8463 (ER), 2016 WL 316856 (S.D.N.Y. Jan. 26, 2016) ................ 15

*Walker v. Schult*, 717 F.3d 119 (2d Cir. 2013)................................................... 10, 11

*Washington v. Westchester Cty. Dep't of Corr.*, No. 13-cv-05322 (KPF), 2014 WL 1778410 (S.D.N.Y. Apr. 25, 2014)..................................................................... 14

**Statutes**

42 U.S.C. § 1983 ........................................................................... 2, 14, 16

CPLR § 1024................................................................................. 2, 16

Federal Rule of Civil Procedure 12 ........................................................ 1

Federal Rule of Civil Procedure 15 ........................................................ 16

Federal Rule of Civil Procedure 72 ..................................................... 1, 18

**Rules**

Title 40, Chapter 3, Section 3-02(d)(2) of the Rules of the City of New York ........................... 11

Plaintiff Lucille Tirado ("Plaintiff"), as the Administratrix of the Estate of Eugene

Castelle, Deceased ("Castelle"), hereby submits this Opposition to the City of New York,

Physicians' Assistant Quentz Alexis, and Correction Officer Anais DaCruz's ("Defendants")

Objections under Federal Rule of Civil Procedure 72 to Magistrate Judge Sarah Netburn's Report

and Recommendation ("Report") on Defendants' Motion to Dismiss under Federal Rule of Civil

Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Eugene "Sonny" Castelle died on Riker's Island, at the Anna M. Kross Center

("AMKC")—like so many other victims before—after his serious medical needs were ignored by

the City's employees who work there. This was the inevitable result of the City's longstanding

failure to properly discipline and train Riker's staff, who have repeatedly done nothing while

detainees in horrible pain suffer and die in front of them.

The Complaint alleges two civil rights violations, both deliberate indifference under the

Fourteenth Amendment. *First*, Quentz Alexis[1] ("Alexis"), a junior physicians' assistant at Riker's

Island prescribed Castelle a combination of Librium and methadone, despite a stark warning on

the Librium label that these two drugs together can cause respiratory failure and death. Worse, he

failed to follow the same warnings that made it clear that if it was absolutely necessary to

prescribe these two drugs, Castelle needed to be closely monitored. But this was not done.

*Second*, a few days later, Castelle started suffering from the exact symptoms the Librium label

warned of. He deteriorated in his housing area, and asked a guard for help. But his pleas were

---

[1] In the Amended Complaint and prior motion practice, counsel mistakenly referred to Mr. Alexis as Mr. Quentz.

ignored, and he died a few hours later. This was, as Magistrate Judge Netburn found, enough to allege a plausible claim of deliberate indifference to Castelle's serious medical needs.

In addition, Alexis moved to dismiss the complaint as being beyond the statute of limitations.  This too fails. At the outset, Alexis misstates the date the claim accrued. Castelle's claims did not run until he knew he was injured, *i.e.* when he started feeling sick on November 7, 2016. Further, even though Alexis' actual name could not be ascertained until a few months later, the Amended Complaint relates back because Castelle's family spent years litigating in a prior action in state court to determine the names of the defendants responsible for Castelle's death. Under CPLR § 1024, which applies because 42 U.S.C. § 1983 incorporates state law statutes of limitation, these diligent efforts to identify defendants are enough to have the Amended Complaint relate back to the timely filed initial Complaint. Magistrate Judge Netburn agreed in the Report.

In the Report, Magistrate Judge Netburn recommended that these claims not be dismissed, and that related claims that these deaths were caused by the policies and procedures of the City of New York, under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)[2] ("*Monell*"), also be allowed to go forward. Instead of engaging with this Report, and making specific objections to the case law and analysis in the Report itself, Defendants merely re-filed their initial arguments, many of which were not even made until their reply brief, expecting this Court to expend considerable time starting the analysis from scratch. Consequently, contrary to Defendants' claim, the Report should be reviewed for clear error, not *de novo*. And under this standard, or any standard, the Report should be adopted in its entirety.

---

[2] Defendants, oddly do not challenge Magistrate Judge Netburn's finding that the *Monell* claims were adequately alleged.

2

Finally, the Defendants complain that Magistrate Judge Netburn failed to bifurcate *Monell* discovery. But the Defendants waited far too long to make this motion, and it was entirely reasonable for Magistrate Judge Netburn to deny the request. Given that this is a non-dispositive motion, it is also reviewed for clear error, and under this demanding standard, the Defendants' attempts to overturn this discretionary ruling on discovery fail. Moreover, discovery is nearly finished, and it would be inefficient to stop at the last minute.

## STATEMENT OF FACTS

### a. Castelle's Death at Riker's Island.

On November 8, 2016, after having just turned 27 years old, Castelle died while at the custody of the City of New York Department of Correction at AMKC on Rikers Island. ¶26.[3] AMKC is the facility on Rikers where all pre-trial detainees with drug detoxication needs are housed. ¶27. These detainees have a higher incidence of medical emergencies and a greater need for medical attention, than the population as a whole. ¶28. Castelle had a history of struggling with substance abuse and the medical issues that come with addiction. These facts are known to The City of New York. ¶28.

On November 2, 2016, Castelle arrived at Rikers Island after spending several weeks in jail in Florida. ¶29. The state of Florida has a policy of denying methadone to anyone incarcerated, and as a result, Castelle would have already suffered any significant withdrawal symptoms prior to arriving. *Id*. Upon entering Riker's Island, Castelle underwent a medical screening as required under the Rules of the City of New York, Title 40, Chapter 3, Section 3-04. ¶30. Around this time, Quentz Alexis, a Physician's Assistant ("PA") prescribed two separate depressants: Librium and methadone. ¶33. These two drugs provide a major risk of death when

---

[3] The allegations in the Amended Complaint, Dkt. No. 47, are referenced herein as "¶_".

3

taken together, particularly when combined with Castelle's pre-existing heart condition. ¶33. Librium label includes a specific warning against being prescribed along with an opiate, like methadone: "WARNING: RISKS FROM CONCOMITANT USE WITH OPIOIDS…", in other words: do not prescribe Librium and Methadone together, especially to a patient with a heart condition. ¶34. Despite said warnings and lack of EKG results, Alexis failed to consult a medical doctor before prescribing these medications. ¶36. Having prescribed these two drugs, Alexis also did not prescribe regular monitoring for adverse reactions and did not see Castelle again, despite warnings clearly advising to do so. ¶37-38.

For the next six days, Castelle took the prescribed medications and began experiencing chest pains and difficulty breathing. ¶41. He requested medical attention in Dorm 4 of the AMKC at least once on November 7, 2016, ¶43. At that time, defendants C.O. Ward and Captain Batchelor were on post in the AMKC. ¶44. In the early morning hours of November 8, 2016, Castelle was assisted by a fellow inmate to the "Bubble" *i.e.* the Correction Officer's duty station, to again request medical attention for his symptoms. ¶45. Castelle approached defendant C.O. DaCruz to again request medical attention. *Id*. DaCruz had been working the tail end of a triple consecutive 8-hour shift when she was woken by Castelle to make his final request for medical attention, and although DaCruz observed that Mr. Castelle needed assistance walking and exhibited symptoms of a serious illness, she disregarded procedures related to medical needs of inmates, cursed at him and ordered him back to his housing area where he later died in his sleep. ¶¶46-47.

The Rules of the City of New York, Title 40, Chapter 3, Section 3-02(d)(2), give C.O. DaCruz and the other correction officers zero discretion as to whether to take Castelle to see a medical professional—they were required to do so. ¶52. Castelle was entitled under law to have

a face-to-face interaction with a medical professional. ¶53. Upon information and belief, Castelle was discovered by the Correction Officer who relieved C.O. DaCruz at approximately 8:00 a.m. on November 8, 2016. ¶54. Castelle's medical needs and his struggle with addiction had been met with a cold and willful indifference by both Alexis and DaCruz. ¶55.

### b.  Castelle's Parents Spent Years Investigating Their Son's Death.

Less than a week after Castelle died, his father's attorney sent a broad Freedom of Information Law request to the New York City Department of Correction, including a demand for:

> All documents which reflect, constitute or relate to the medical treatment Eugene J. Castelle received at any time while an inmate of the Department of Corrections, regardless of which facility, but including but not limited to Rikers Island.

Ex. A.[4] On December 8, 2016, prior counsel followed up with a request to the New York City Chief Medical Examiner for all autopsy reports and medical records. Ex. B pg 20. These efforts failed, and on April 6, 2017 the counsel filed an Order to Show Cause demanding that the Chief Medical Examiner provide:

> all medical records and reports, Admissions sheets, History and physical examinations, Physician notes and progress records, Pathology reports, Medications sheets, prescriptions, Diagnostic tests, MRI reports, CT Scan reports, Sonogram reports …

Ex. B pg 1. The Order to Show Cause was resolved when the Chief Medical Examiner provided the medical records—but these records did not include the Riker's Island medical records that identified Alexis. Ex. C; RR¶5.

On May 5, 2017, Castelle's mother, who had been appointed to represent the Estate, filed suit against the City of New York and (improperly) the New York City Department of Correction, alleging broad medical malpractice claims, including:

---

[4] Exhibits attached to the Declaration of Rob Rickner, dated June 5, 2020, are referenced as "Ex._", filed as ECF No. 69. Paragraphs in this Declaration are referenced as "RR¶_".

> The defendants, THE CITY OF NEW YORK and THE NEW YORK CITY
> DEPARTMENT OF CORRECTIONS, through their agents, servants and/or
> employees, were careless and negligent in the following ways: in failing to timely
> monitor the progress of the plaintiff's condition and otherwise provide any
> medical care or treatment to the plaintiff; in failing to perform and/or order and/or
> refer this plaintiff for an appropriate medical evaluation; in failing to look for
> signs and symptoms of a stroke as well as acute cardiac distress … in failing to
> arrive at a proper, appropriate and reasonable plan to manage and treat the
> plaintiff … in failing to issue the proper orders and/or instructions to the ancillary
> personnel, such as nurses and others in the care and treatment of the plaintiff, and
> in failing to make certain that such advice and orders that were issued were
> timely, adequately and properly complied with; in failing to take and record and
> be cognizant and aware of the plaintiff's vital signs at appropriate intervals …

Tirado v. City of New York, et al., 23673/2017E (Bronx County Supreme Court); Ex. D. (Bill of

Particulars).

On December 19, 2017, the parties entered a Preliminary Conference Order which

required, among other discovery, that the City provide:

> [N]ames and addresses of any witnesses to the occurrence and notice witnesses;
> accident reports; party statements; photographs taken in the ordinary course of
> business within 60 days.
>
> …
>
> Department of Correction incident report, subject to redaction of privileged
> information, including any information regarding criminal acts of other inmates
> and/or personal information regarding DOC employees … Injury to inmate report
> (within 60 days after receipt of an authorization from plaintiff).

Ex. E. On January 2, 2018, the City was served medical authorizations including an authorization

for medical records from Riker's Island. Ex. F. Based on the City's regular litigation practice, they

would have used this release to obtain records that show Alexis prescribed and was responsible for

the Librium and methadone prescriptions. RR¶10. The City failed to comply with the Preliminary

Conference Order, and on February 22, 2018, Castelle moved to compel. Ex. G. That motion was

withdrawn, likely after an informal conference with the court, but there is no record to confirm on

the docket. RR¶12. On May 8, 2018, the City provided a partial discovery response, including logs

showing which officers were in the area where Castelle died and some limited medical records, such as screening forms for suicide risk. RR¶13. None of these records identify Alexis or discuss the medication he was prescribed. Id.

On May 10, 2018, based on the deficiencies in the prior production, Castelle served broad discovery demands on the City including:

> 1)    The complete investigatory file for the death of Mr. Eugene Castelle at the Riker's Facility from the New York City Department of Correction Investigation Division
>
> 2)    All records, reports, findings, recommendations regarding any investigation conducted by the Department of Investigations regarding the death of Mr. Castelle at the Riker's facility.

Ex. H. On October 29, 2018, Castelle moved to compel a response to the Preliminary Conference Order, the discovery demands, and for the City to produce for deposition the officers and investigators who could testify as to the events surround Castelle's death and the subsequent investigation. Ex I. This motion was also withdrawn, and the parties entered into a Stipulation on November 19, 2018 where the City agreed to respond to discovery and produce witnesses. Ex J. They did not comply, however, and on April 22, 2019 entered into yet another Stipulation where the City was required to respond to discovery and produce witnesses. Ex K. Plaintiff's counsel conferred with prior counsel and learned that throughout discovery the medical records identifying Alexis were never produced. RR¶18.

Instead of complying with discovery, however, the City moved to dismiss the case based on the prior firm's failure to serve a notice of claim. The negligence claims in the Bronx case were dismissed on January 22, 2020. Ex L.

Plaintiff, however, realizing that the prior firm had committed malpractice, retained present counsel shortly before the three-year statute of limitations expired. RR¶20. We obtained the

litigation file from prior counsel promptly and filed the Complaint on November 7, 2019. Id. In it, a JOHN DOE M.D. was identified as failing to prescribe close monitoring to protect against the combination of Librium and methadone, and Castelle's pre-existing heart condition. Id. This allegation was based on the autopsy report that showed the combination of the two drugs in Castelle's blood, along with the reasonable inference that he had been prescribed these drugs by a doctor while in custody. *Id*.

After serving the Complaint on the City, defense counsel agreed to provide the medical records from Castelle's treatment at Riker's Island, and agreed to allow an amended complaint within 90 days of getting the records. Ex L. After numerous follow-up requests, defense counsel emailed on January 31, 2020 to say that they had the records and would produce them within a week. RR¶22. Two weeks later, on February 13, 2020, counsel received by email the records identifying Alexis and his role in Castelle's medical treatment. RR¶23.

The Amended Complaint was filed on March 9, 2020. Dkt No. 47. Given the pandemic, plaintiff's counsel asked whether Alexis would consent to accept service through counsel. He refused. Defense counsel provided a service address on May 6, 2020, and plaintiff's counsel served a request for waiver of service by mail, which Alexis signed shortly before the Initial Conference on June 3, 2020. RR¶24.

## ARGUMENT

Defendants "Objections" to Magistrate Judge Netburn's Report and Recommendation are not objections at all. They merely repeat the arguments in their initial motion, many of which they did not even make until their reply brief, without ever engaging in the Judge's analysis, cited case law, or findings. In fact, the only way one would ever know that this was a motion under Federal Rule Civil Procedure 72 are the perfunctory references to the Report in the

headings of their arguments and a few sentences in their preliminary statement. Thus, Defendants misstate the standard of review. It is not *de novo*. If Defendants insist on merely reiterating arguments made in the initial motion, the standard is plain error.

"The purpose of the Federal Magistrates Act is to relieve courts of unnecessary work." *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980). "There is no increase in efficiency, and much extra work, when a party attempts to relitigate every argument which it presented to the Magistrate Judge." *Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992). "Objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke *de novo* review." *Moskowitz v. La Suisse, Societe D'Assurances sur la Vie*, 282 F.R.D. 54, 59 (S.D.N.Y. 2012) (quotation omitted).

Defendants have entirely ignored Magistrate Judge Netburn's hard work, and lengthy opinion, expecting this Court to start over from scratch. The consequence for burdening the Court is that Defendants objections should be reviewed for "clear error." *Id*.

## I.   DEFENDANTS VIOLATED CASTELLE'S FOURTEENTH AMENDMENT RIGHT TO ADEQUATE MEDICAL CARE.

To show a Fourteenth Amendment violation, Castelle must first show, objectively, that there was an "unreasonable risk of serious damage to his health." *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017). And second, as a pretrial detainee, "to establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment," Castelle must prove that Defendants "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee," even though Defendants "knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

a. **Castelle's was subjected to an objectively serious deprivation of medical care.**

Defendants do appear to challenge the first prong of this analysis, that Castelle suffered an objectively serious deprivation of medical care. And they never even address the case law and findings on this point in the Report. Nor could they. As a result of the failure to give Castelle any medical care to treat the symptoms, including chest pains and shortness of breath, Castelle died on Riker's Island.

Accordingly, Magistrate Judge Netburn correctly concluded that "'in light of the obligation to construe Plaintiff's pleadings liberally,' the Court concludes that Castelle received inadequate medical care, and an incarcerated individual who presents with Castelle's symptoms, was denied all treatment while experiencing those symptoms, and subsequently dies has sufficiently demonstrated that 'the conditions . . . pose[d] an unreasonable risk of serious damages to his health.'" Report at 10 (quoting *Smith v. Outlaw*, No. 15-cv-09961 (RA), 2017 WL 4417699, at *2 (S.D.N.Y. Sept. 30, 2017) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (finding a plaintiff who had a heart attack and chest pains to have sufficiently asserted a serious deprivation of medical care); and citing *Mandala v. Coughlin*, 920 F. Supp. 342, 353 (E.D.N.Y. 1996) (noting that "ignoring a prisoner's complaints of chest pains where the prisoner later died of a heart attack" constituted a "serious medical need[]"); *contra Hutchinson v. N.Y. State Corr. Officers*, No. 02-cv-02407 (CBM), 2003 WL 22056997, at *5 (S.D.N.Y. Sept. 4, 2003) (finding that chest pains did not "constitute a sufficiently serious condition").

Objectively, failure to give Castelle any treatment was a serious deprivation that caused a serious harm—death. *See* Report at 9 (finding that a court must consider "'how the offending conduct is inadequate and what harm, if any the inadequacy has caused . . . the prisoner.'"

10

quoting *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)).

**b. DaCruz was objectively reckless in disregarding Castelle's serious medical needs.**

Castelle has pleaded mulitple facts that, taken together, make out plausible allegations of reckless disregard against DaCruz. *First*, DaCruz knew, or should have known, that Castelle had been prescribed medications that could cause oversedation and respiratory distress. *See Fleming v. City of New York*, No. 18 CIV. 4866 (GBD), 2019 WL 4392522, at *11 (S.D.N.Y. Aug. 27, 2019), *reconsideration denied*, No. 18 CIV. 4866 (GBD), 2020 WL 2133162 (S.D.N.Y. May 5, 2020) (finding that correction officers knew, or should have known, about the medical diagnoses in Plaintiff's Riker's Island medical records). *Second*, Title 40, Chapter 3, Section 3-02(d)(2) of the Rules of the City of New York requires correction officers to call health services if a detainee needs medical attention. *See Charles v. Orange Cty.*, 925 F.3d 73, 89 (2d Cir. 2019) (finding that failure to follow safety policies demonstrates deliberate indifference). *Third*, Castelle's appearance demonstrated that he was seriously ill. He needed help walking, he looked ill, he complained of chest pains, and in fact he was so sick he died a few hours later. ¶¶42-52. *And finally*, Castelle actually asked to see a doctor, and DaCruz refused to call the medical staff. *See Cano v. City of New York*, 44 F. Supp. 3d 324, 334 (E.D.N.Y. 2014) ("plaintiff's allegations that he directly spoke to defendants about conditions and that certain defendants directly witnessed conditions were sufficient to satisfy deliberate indifference on motion to dismiss" citing *Walker v. Schult*, 717 F.3d 119, 130 (2d Cir. 2013)). Based on these facts, it is certainly plausible that Castelle's constitutional rights were violated, so his allegations are more than enough to survive a motion to dismiss.

11

Consequently, Magistrate Judge Netburn correctly found that: "Given these circumstances, C.O. DaCruz should have, at a minimum, 'taken *some* action instead of merely' sending Castelle back to his bed, where he died hours later. *Smith*, 2017 WL 4417699, at \*5 (emphasis in original)." Report at 13-14.

In support of their objections, Defendants merely cite the overall Supreme Court and Second Circuit standards, and a single case where a correction officer fell asleep and was deemed only negligent—hardly comparable to the allegations here. Opp at 8 citing *Dash v. Mayers*, No. 19-CV-414 (GBD) (JLC), 2020 WL 1946303, at \*7 (S.D.N.Y. Apr. 23, 2020), report and recommendation adopted sub nom. *Dash v. Doe*, 2020 WL 3057133 (S.D.N.Y. June 9, 2020) ("the fact that CO Doe may have fallen asleep during his shift constitutes, at best, negligence").

In place of legal argument and case law, Defendants turn the motion to dismiss standard on its head, parse out each of the facts, and then claim that each one, twisting the inferences in Defendants' favor, fails to state a claim. This, of course, is the opposite of what Plaintiff needs to plead, namely a concise statement of the facts, which accepted as true, "state a claim to relief that is plausible on its face," meaning that the facts alleged allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020). Defendants' can argue what the City's policies mean in practice, and what DaCruz knew or did not know, at trial. Taken as a whole, Plaintiff's allegations are more than plausible, and thus it would be inappropriate to dismiss them on the pleadings, and before discovery.

c. **Alexis was objectively reckless in disregarding Castelle's serious medical needs by ignoring the dangers of prescribing methadone and Librium.**

Alexis was at least reckless in prescribing Librium and methadone together without any EKG or monitoring, given the stark warnings on the Librium label, published by the Food and Drug Administration ("FDA"):

> WARNING: RISKS FROM CONCOMITANT USE WITH OPIOIDS Concomitant use of benzodiazepines and opioids may result in profound sedation, ***respiratory depression, coma, and death*** … Reserve concomitant prescribing of these drugs for use in patients for whom alternative treatment options are inadequate. Limit dosages and durations to the minimum required. Follow patients for signs and symptoms of respiratory depression and sedation.

> Concomitant use of benzodiazepines, including Librium, and opioids may result in profound sedation, respiratory depression, coma, and death. … If a decision is made to prescribe Librium concomitantly with opioids, prescribe the lowest effective dosages and minimum durations of concomitant use, and follow patients closely for signs and symptoms of respiratory depression and sedation.

¶¶34-35 (emphasis added). This warning, on the very first page of the FDA's publication[5], is the type of risk that Alexis either knew, or should have known, when prescribing an opiate and a benzodiazepine to Castelle at the same time.

The risk of Alexis' prescription—respiratory depression, coma and death—were readily apparent, but he recklessly failed to mitigate it. The FDA provides explicit instructions: "follow patients closely." *Id*. This was not done. Nevertheless, Alexis prescribed the two drugs anyway. ¶33. Despite having only a few years of experience, Alexis, a physician's assistant, never consulted with a medical doctor. ¶40. And he never ordered close monitoring, including any EKG testing in the future. ¶37. Castelle soon died from the exact conditions the FDA warned this drug combination would cause—respiratory depression and heart failure. ¶¶32, 42-44. This is exactly

---

[5] Available at https://www.accessdata.fda.gov/drugsatfda_docs/label/2016/012249s049lbl.pdf

the kind of reckless disregard for known risks that establish a Fourteenth Amendment violation. It is not mere negligence, as the City claims.

Thus, Magistrate Judge Netburn was correct in finding that this allegation went beyond negligence, into deliberate indifference because the "decision to prescribe both medications is the type of 'medical judgment that, without more, does not amount to deliberate indifference.' *Washington v. Westchester Cty. Dep't of Corr.*, No. 13-cv-05322 (KPF), 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014). But in light of the additional allegations in Plaintiff's Amended Complaint—namely, the known risks of [Alexis'] course of conduct—the actions here amount to more than a question of 'medical judgment' and establish the second prong." Report at 17.

Again, rather than addressing this finding by Magistrate Judge Netburn directly, citing any case law beyond the general standard, or accepting the inferences that Plaintiff is entitled to, Defendants quibble about the particular wording of the FDA warning, drawing inferences in their favor that Alexis' conduct was not as dangerous as Plaintiff alleges. Opp. at 9. Defendants also claim that other unknown people may have been responsible for caring for Castelle. Opp. at 10. These are factual disputes, best handled through expert testimony at trial, not grounds for challenging a pleading.

## II.   THE STATUTE OF LIMITATIONS DOES NOT BAR THE CLAIMS AGAINST ALEXIS.

### a.   Plaintiff's claims against Alexis did not accrue until November 7, 2016.

The statute of limitations for a claim under 42 U.S.C. § 1983 begins to run "from the date a plaintiff knows or has reason to know of the ***injury*** that forms the basis of his claim." *Perez v. Johnson*, No. 07-CV-3761 (NRB), 2008 WL 2876546, at *2 (S.D.N.Y. July 23, 2008) (citing *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993) (emphasis added)). In fact, "[d]elay in discovering the cause of the injury does not prevent the claim from accruing—'In applying a

discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock.'" *Gonzalez v. Wright*, 665 F. Supp. 2d 334, 348–49 (S.D.N.Y. 2009) (ruling that this discovery of the injury rule applies to deliberate indifference claims, quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000)).

Put simply, Plaintiff's claims did not accrue until Castelle realized he was sick on November 7, 2016. He may not have known the cause of his illness, but because Castelle is not a doctor and had no reason to believe he had been given a dangerous combination of drugs, he also did not know he had been injured.

Defendants' own cases actually support this analysis. In *Traore v. Shield*, the court found that "a claim for deliberate indifference accrues when the plaintiff knows or has reason to know of the injury" and thus the plaintiff's claims in that case accrued when he was beat up by the police. No. 14-CV-8463 (ER), 2016 WL 316856, at *5 (S.D.N.Y. Jan. 26, 2016) (quoting *Fairley v. Collins*, No. 09-CV-6894 (PGG), 2011 WL 1002422, at *3 (S.D.N.Y. Mar. 15, 2011)). Similarly, in *Eagleston v. Guido*, the claim accrued when the plaintiff knew she had a cause of action against the officers, and knew she had suffered an injury—a discriminatory failure to protect her. 41 F.3d 865, 871 (2d Cir. 1994). It was irrelevant that due to this discrimination she was injured further when someone later stabbed her.

Further, this argument was made for the first time in Defendants' reply brief, ECF No. 73 at 7-9, so Magistrate Judge Netburn was right to ignore it. *See Colon v. City of New York*, No. 11-CV-0173 (MKB), 2014 WL 1338730, at *9 (E.D.N.Y. Apr. 2, 2014) (collecting Second Circuit cases for the proposition "The Second Circuit has clearly stated that arguments raised for the first time in reply papers or thereafter are properly ignored.").

15

**b. The claims against Alexis relate back to the time the Complaint was timely filed.**

Claims under 42 U.S.C. § 1983 incorporate the state law statute of limitations, which in New York is three years. *See Owens v. Okure*, 488 U.S. 235, 251 (1989). Because state law dictates the statute of limitations, under Federal Rule of Civil Procedure 15(c)(1)(A), federal courts also adopt the relation back and tolling provision under New York state law for § 1983 claims. *See Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013); *DaCosta v. City of New York*, 296 F. Supp. 3d 569, 584 (E.D.N.Y. 2017). Consequently, if Plaintiff can establish that the claims against Alexis relate back to the original Complaint, under the New York Civil Practice Law and Rules section 1024, they are timely. And because Plaintiff diligently sought discovery for years in a prior case, relation back under those statutes is appropriate, and the claims against Alexis are timely because they were filed within the three-year statute of limitations.

Under C.P.L.R. § 1024, John Doe defendants may be substituted, and the statute of limitations will be measured based on when the original complaint was filed, where a party meets two conditions: "First, the party must exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name. Second, the party must describe the John Doe party in such form as will fairly apprise the party that he is the intended defendant." *Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013).[6]

---

[6] In *DaCosta v. City of New York*, 296 F. Supp. 3d 569, 584 (E.D.N.Y. 2017), the court found two additional requirements, which were not applied by the Second Circuit in *Hogan*, a lack of prejudice and service within 120 days under C.P.L.R. 306. Plaintiff also satisfies these. There is no prejudice to Alexis. He is being defended by attorneys hired by the City of New York, who consented to an amended complaint. *Medina v. City of New York*, 134 A.D.3d 433 (1st Dept 2015) (finding no prejudice where the City was defending the case and had no objection to amending the complaint to replace a John Doe with the name of a specific officer). And the City has had access to Castelle's medical records since at least 2018, and has been aware that the family was pursuing claims based on the egregious medical care he received at Riker's Island. His attorneys have had ample time to mount a defense. And he tried diligently to obtain the medical records, which were not received until mid-February and the service address was not

The initial Complaint alleged that a "JOHN DOE, M.D." failed to monitor Castelle after prescribing him with the dangerous combination of Librium and methadone. ¶¶29-32. While Alexis, it turns out, is a physician's assistant and not a medical doctor, the initial allegations are sufficient to "fairly apprise" Alexis he was the intended defendant because the allegations signaled that there is an unidentified defendant and described their conduct and how it relates to the claims. *Hogan*, 738 F.3d at 519; *see also Duncan v. City of New York*, 11-CV-3901 (ENV) (JO), 2014 WL 3530858, at *3 (E.D.N.Y. July 15, 2014) (finding that a John Doe was described in enough detail where the plaintiff made it clear there was an unknown party and the initial complaint describes "the precise conduct" alleged in the amended complaint).

And the Castelle family has also been diligent in trying to investigate and identify the City employees at Riker's Island who were responsible for Castelle's death, including an Order to Show Cause, two motions to compel, and a series of Stipulations and Orders in the Bronx action. The medical records identifying Alexis should have been produced years ago, and had they been, Alexis would have been included in the initial Complaint. *DaCosta v. City of New York*, 296 F. Supp. 3d 569, 605 (E.D.N.Y. 2017) (finding that "Corporations Counsel did not adhere to its ethical and discovery obligations" when it failed to timely provide discovery that would have allowed the plaintiff to timely identify the proper defendant).

Defendants only response to the lengthy detail of Plaintiff's efforts to identify Alexis, and all the other people who may be responsible for her son's death, is that Plaintiff's prior counsel may have sent an authorization to the wrong entity. Opp. at 13. But the standard of due diligence is not perfection; Plaintiff need only prove that she made "genuine efforts" to find the proper

---

disclosed until May. There is thus good cause to extend this 120-day period. *See DaCosta*, 296 F. Supp. 3d at 586. In addition, Alexis consented to service so it is unclear how this rule would apply.

defendants. *See Rogers v. Dunkirk Aviation Sales & Serv., Inc.*, 31 A.D.3d 1119, 1120 (4th Dept. 2006) (collecting cases). Thus, Magistrate Judge Netburn was correct in finding that Plaintiff had been diligent.[7]

## III.   IN THE ALTERNATIVE, PLAINTIFF SHOULD BE ALLOWED TO AMEND THE COMPLAINT.

Plaintiff has only amended the Complaint once, to substitute the names of John Doe Defendants with the actual parties. *Compare* ECF No. 1 *with* 47. Discovery has been on-going, and is scheduled to finish on April 31, 2021. Plaintiff has far more information about Defendants' wrongdoing, and to the extent that this Court thinks that any of the underlying allegations miss the mark, Plaintiff can now add substantial detail, supported by the Defendants' own policies, witness interviews, and findings by Correctional Health Services. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015) (reversing for failure to give leave to amend in a complex case where "at the time of the pre-motion conference, there was no decision yet as to the precise defects, such that a proposed cure would have been in order"). Plaintiff should, if the Report is not adopted, be given leave to amend.

## IV.   DEFENDANTS' COMPLAINTS ABOUT *MONELL* DISCOVERY CAME TOO LATE, WILL SOON BE MOOT, AND DO NOT DEMONSTRATE CLEAR ERROR.

Defendants' motion to bifurcate *Monell* discovery is a non-dispositive motion, and thus it may only be modified or set aside if the ruling is clearly erroneous or contrary to the law. *See* Fed.R.Civ.P. 72(a); *see also Sheikhan v. Lenox Hill Hospital*, 98-CV-6468 (WHP), 1999 WL 386714, *1 (S.D.N.Y. June 11, 1999) (finding that the Rule 72(a) standard applies to discovery

---

[7] Defendants mention that Plaintiff originally thought Alexis was a doctor, not a physicians' assistant, but they do not appear to actually contest Magistrate Judge Netburn's finding that Plaintiff sufficiently described the John Doe that ultimately turned out to be Alexis. Opp. at 12.

orders). "Findings are clearly erroneous when the reviewing court is firmly convinced the lower court decided an issue in error." *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002); *Mathias v. Jacobs*, 167 F.Supp.2d 606, 622 (S.D.N.Y.2001). "An order may be deemed contrary to law 'when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Id.* (quoting *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F.Supp.2d 70, 74 (N.D.N.Y.2000)). Consequently, Defendants therefore must meet "a heavy burden." *Id.* (quoting *Citicorp v. Interbank Card Ass'n*, 87 F.R.D. 43, 46 (S.D.N.Y.1980)).

Plaintiff filed suit on November 7, 2019. ECF No. 1. The Initial Pretrial Conference was scheduled on May 15, 2020, to be held on June 3, 2020. ECF No. 53. A discovery schedule was entered on June 4, 2020. ECF No. 67. Plaintiff served discovery requests seeking *Monell* discovery on August 25, 2020. ECF No. 114-1. Defendants failed to respond for months, and when they did, they objected to everything *Monell* related and failed to follow the 2015 Amendments, interposing blunderbuss objections without any specificity or detail. ECF No. 94 (detailing discovery failures). So, after finally getting the responses, Plaintiff filed a motion to compel on January 19, 2021. *Id.* In response, for the very first time, Defendants moved to bifurcate *Monell* discovery. ECF No. 95. The motion was denied, and *Monell* discovery was compelled. ECF. Nos. 96 and 97. But then, Defendants waited six weeks, until February 23, 2021, to file their objections, which are nearly identical to their initial motion, albeit formatted differently. ECF No. 114. In meantime, the parties have engaged in substantial discovery, including *Monell* discovery. Now, discovery is nearly complete, and if bifurcation was granted, all this hard work would be wasted.

19

In sum, Magistrate Judge Netburn's Order denying bifurcation was an entirely reasonable exercise of discretion, and Defendants' motion is merely an attempt to relitigate the issue. Their objection should be denied, and the Order upheld.

## CONCLUSION

For the foregoing reasons, the Magistrate Judge Sarah Netburn's Report and Recommendation should be adopted in its entirety, and the Order denying bifurcation of *Monell* discovery should be upheld.

Dated:  New York, New York
      March 30, 2021

Rickner PLLC

By:      /s/

      Rob Rickner

14 Wall Street, Suite 1603
New York, New York 10005
Phone: (212) 300-6506
Fax: (888) 390-5401
*Attorney for Plaintiff*